Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TRIPLE T CONSTRUCTION, *et al*,

  *Plaintiffs*,

v.

TOWNSHIP OF WEST MILFORD, *et al*,

  *Defendants*.

Civil Action No. 14-2522

**OPINION**

**John Michael Vazquez, U.S.D.J.**

  **THIS MATTER** comes before the Court by way of the Motion for Summary Judgment filed by Defendants the Township of West Milford (the "Township"), the Township of West Milford Planning Board (the "Planning Board"), Nancy Gage, and Vincent Lupo (collectively "Defendants"). D.E. 48. Plaintiffs Triple T Construction, L.L.C. ("Triple T"), Scott Ridings, Organic Waste Solutions, LLC ("OW Solutions"), and Organic Waste Systems, LLC (individually "OW Systems," collectively "Plaintiffs") filed a brief in opposition (D.E. 52) to which Defendants replied (D.E. 53). The Court reviewed all submissions made in support and in opposition to the motion, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). However, because Court no longer has subject matter jurisdiction over this case, the Court declines to exercise its discretion to retain supplemental jurisdiction over the remaining state law claims, which are addressed in Defendants' motion for summary judgment. As a result,

the Court administratively terminates Defendants' summary judgment motion and remands this action to the Superior Court of New Jersey, Passaic County. *See* 28 U.S.C. § 1447(c).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background[1]

Scott Ridings is the owner of Triple T, the last remaining member of OW Solutions, and the sole member of OW Systems. Ridings Aff. ¶ 1. OW Solutions and OW Systems are in the business of "vegetative recycling and mulch production activities." *Id.* ¶ 7. Triple T owns a parcel of property in West Milford, New Jersey that is known as Lot 29. *Id.* ¶ 2.

After Triple T purchased Lot 29, Triple T and the Township were parties to a lease that expired on September 30, 2012. *See* Harrison Aff. Ex. F. The Township in turn subleased the 3.53-acre parcel to OW Solutions for use as a compost site. This sublease was also governed by an express contract that likewise expired on September 30, 2012. *See* Harrison Aff. Ex. G. The Township did not receive any payment in consideration for OW Solutions' use of the land. Instead, the Township and its residents were permitted to dump vegetative waste on the parcel and were entitled to take half of the resulting mulch after OW Solutions processed the waste. Plfs' Resp. to DSOMF ¶ 15.

Defendants contend that under the sublease, only the Township could limit the amount of material it and its residents could dump on the property, and that the Township did not set any such limits. DSOMF ¶ 56. Plaintiffs disagree and assert that debris from the Township and its

---

[1] The factual background is taken from the record including the following sources: (1) Defendants' Purported Statement of Material Facts ("DSOMF"), D.E. 48-2, and Plaintiffs' response and supporting exhibits ("Plfs' Resp. to DSOMF"), D.E. 52-1, -2; (2) the Affidavit of Plaintiffs in Response to Motion for Summary Judgment ("Ridings Aff."), D.E. 52-3, and (3) the Affidavit of Eric L. Harrison, Esq. and supporting exhibits ("Harrison Aff."), D.E. 48.

residents could not exceed "the permit limits, which were 15,000 cubic yard overall and specifically 7,500 cubic yards of unprocessed debris and 7,500 yards of processed material."[2] Plfs' Resp. to DSOMF ¶ 85.

On October 28, 2012, shortly after the lease and sublease expired, Superstorm Sandy hit New Jersey. The storm caused significant damage throughout the state and "the resulting debris required extensive mulching services in West Milford and surrounding areas." Plfs' Resp. to DSOMF ¶ 20. Plaintiffs allege that "Defendants caused more than 80,000 cubic yards of unprocessed vegetative brush to be brought to [the] property, representing more than 10 years['] worth of material within a nine[-]month period of time." Ridings Aff. ¶ 24. Plaintiffs did not prevent the Township or its resident from dumping waste on the property and continued processing the Township's Sandy debris through June 2013. *Id.* ¶ 35; Harrison Aff. Ex. H, 104:2-6; *Id.* Ex. P. The Township also continued to make monthly rental payments that were cashed by Triple T through March 2013. Plfs' Resp. to DSOMF ¶¶ 71, 74. The Township also made rental payments in April, May and June of 2013. Plaintiffs, however, did not cash these checks. *Id.* ¶ 74. Plaintiffs contend that the Township's payments after the lease expired were "treated as partial payments that would be supplemented and corrected retroactively once a new lease was agreed [upon.]" Ridings Aff. ¶ 36. Nothing in the record establishes that Plaintiffs ever informed the Township that they considered the rental amounts to be partial payments. Plaintiffs also failed to tell the

---

[2] Ridings states that Defendants' references to a permit are in error because the limits are "actually an exemption for vegetative recycling that is acquired by proving notice to the New Jersey Department of Environmental Protection and obtaining administrative approvals." Ridings Aff. ¶ 20. Plaintiffs, however, appear to use the words permit and exemption interchangeably. For consistency, the Court will use the term permit.

3

Township that it was no longer accepting the monthly payments after March 2013.[3]  Plfs' Resp. to DSOMF ¶¶ 73-74.

After the lease and sublease expired, the parties attempted to negotiate new terms. *Id.* ¶¶ 86-91. On December 21, 2012, Ridings participated in a meeting with Township Solicitor Fred Semrau and Defendant Gage. During this meeting, Ridings contends that he told the Township that they needed a new lease and that the Township would need to pay for processing Sandy materials separately. Ridings Aff. ¶¶ 44-45. Ridings contends that Semrau and Gage agreed that Sandy materials would be paid for separately. *Id.* ¶ 46. Although negotiations continued, on July 3, 2013, Semrau sent Moshman a letter stating that the Township could not agree to Plaintiffs' proposed rent increase (from $4,500 to $7,500) and that the Township had vacated the property as of June 30, 2013 thereby ceasing its participation in both the lease and the sublease. *Id.* Ex. R.

### B. Procedural History

On March 21, 2014, Plaintiffs filed their complaint in the Superior Court of New Jersey, Passaic County. Plaintiffs' complaint contained twenty counts that alleged claims for breach of contract, unjust enrichment, fraud, defamation, extortion, malicious prosecution, and mental and physical harm.[4] Compl., D.E. 1-1. Defendants removed the matter to this Court on April 18, 2014 on the basis of federal question jurisdiction. D.E. 1. Defendants alleged that Plaintiffs asserted a claim for violations of their federal civil rights (Count Thirteen) and a claim pursuant to the First

---

[3] In accordance with Township policy, after the Township realized that the checks were uncashed, it passed a resolution on February 5, 2014 canceling the checks. Plfs' Resp. to DSOMF ¶ 74, Harrison Aff. Ex. V.

[4] Plaintiffs numbered the paragraphs in the complaint by restarting the paragraph numbering with every new section and count, so the Court cannot reference the Complaint by paragraph number. Consequently, citations to the complaint herein will reference page numbers instead of paragraph numbers.

4

Amendment of the United States Constitution (Count Fifteen). *Id.* ¶ 3. Defendants also filed a counterclaim alleging that Plaintiffs owe the Planning Board $400.87 in unpaid invoices. D.E. 4.

Defendants filed a partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on May 6, 2014. D.E. 3. On June 11, 2014, Judge Linares dismissed Plaintiffs' breach of contract claims (Counts One, Two, Four, Six and Sixteen), the unjust enrichment claims as to the Planning Board, Nancy Gage, and Vincent Lupo (Counts Three and Five), the fraud claim (Count Seven), the defamation and libel claims (Counts Eight, Eleven, Fourteen, and Nineteen), Plaintiffs' extortion claim (Count Twelve), and the malicious prosecution claims (Counts Thirteen and Fifteen). Judge Linares also dismissed Counts Seventeen, Eighteen and Twenty because they did not assert any legal claims. *See* D.E. 9. Significantly, all of Plaintiffs claims that arose under the Constitution or federal law were dismissed.

Judge Linares provided Plaintiffs an opportunity to re-plead the claims that were not dismissed with prejudice, however, Plaintiffs did not file an amended pleading. As a result, the following state-law based claims remain: (1) Count Three – an unjust enrichment claim as to the Township regarding the processing of Sandy debris; (2) Count Nine – a negligence claim asserting that Defendants negligently allowed oil to spill on Plaintiffs' land and failed to remediate the spill; and (3) Count Ten – a trespass claim alleging that the oil spill constituted a trespass upon Plaintiffs' property or that Defendants trespassed on Lot 29 while remediating the oil spill; and (4) the Planning Board's counterclaim regarding unpaid invoices.

Defendants filed this motion on April 22, 2016. D.E. 48. Among other things, Defendants argue that the unjust enrichment claim should be dismissed as a matter of law because the Township and OW Solutions were holdover tenants under the lease and sublease. Defendants continue that as holdover tenants, the parties were governed by the terms of a lease and sublease,

and, therefore, Plaintiffs cannot assert a claim for unjust enrichment. Defs' Br. at 6-24, D.E. 48-4. Defendants also allege that summary judgment must be granted for Plaintiffs' negligence and trespass claims because Plaintiffs failed to file a notice of tort claim regarding the oil spill. *Id.* at 32-35. Finally, Defendants argue that summary judgment should be granted as to the counterclaim because Plaintiffs fail to provide any credible evidence demonstrating that the invoices have been paid. *Id.* at 38. Defendants did not address the Court's subject matter jurisdiction.

Plaintiffs filed a brief opposing Defendants' motion.[5] Plaintiffs counter that OW Solutions and the Township were not holdover tenants after the lease and sublease expired. Plaintiffs also allege that even if the lease and sublease remained in effect, Defendants breached the sublease[6] because they dumped more debris than was permitted under the sublease and permit. As a result, Plaintiffs contend that Defendants were unjustly enriched. Plfs' Br. at 10-26, D.E. 52. As for the negligence and trespass claims, Plaintiffs do not address Defendants' argument regarding the notice of tort claim. Plaintiffs do, however, argue that summary judgment should be denied because Plaintiffs admit to the negligence and trespass. *Id.* at 26-27. Finally, Plaintiffs argue that summary judgment should be denied as to the Planning Board's counterclaim because Plaintiffs are owed more money in damages than the amount of outstanding invoices. *Id.* at 27. Plaintiffs also did not address the subject matter jurisdiction of the Court.

---

[5] While writing this opinion, the Court independently learned that Plaintiffs' attorney, Lawrence G. Tosi, was apparently disbarred from the practice of law in New Jersey on November 1, 2016. *In re Lawrence G. Tosi*, 227 N.J. 43, 43 (2016). It appears that Mr. Tosi's license was active when he filed the opposition brief on May 23, 2016; the Court could find no evidence to the contrary.

[6] As noted, Judge Linares previously dismissed the breach of contract claims, and Plaintiff did not file an amended complaint reasserting the breach of contract counts.

6

## II.  LACK OF SUBJECT MATTER JURISDICTION

"Federal courts are not courts of general jurisdiction." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986). In order to adjudicate a case, a federal court must have subject matter jurisdiction. *Id.* While neither party raised the issue of remand here, a federal court is obliged to notice any jurisdictional defects. *Kaplan v. Garrison*, No. 15-1915 (JBS-JS), 2015 WL 2159827, at *2 (D.N.J. May 6, 2015). Defendants removed this matter on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because the complaint alleged violations of Plaintiffs' federal civil rights and claims under the First Amendment of the United States Constitution.[7] *See* D.E. 1. The Court had supplemental jurisdiction over Plaintiffs' other claims. 28 U.S.C. § 1367. When Judge Linares dismissed Plaintiffs' federal question claims, the Court lost its subject matter jurisdiction. D.E. 9. If Plaintiffs had filed an amended complaint, as they were permitted, the Court may have had subject matter jurisdiction if the Plaintiffs plausibly pled a federal cause of action. Plaintiffs, however, did not file an amended complaint.

28 U.S.C. § 1367(c) gives district courts discretion to decline to hear state law claims they would otherwise have supplemental jurisdiction over through Section 1367(a). Specifically, Section 1367(c)(3) provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." Thus, retaining supplemental jurisdiction is a matter of discretion. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). However, the Third Circuit has determined that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of

---

[7] While never alleged by either party, there is also clearly not diversity jurisdiction, pursuant to 28 U.S.C. § 1332, because the parties are all citizens of New Jersey. *See* Compl. at 2.

7

judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id.* (emphasis added). Additionally, while the determination is discretionary, "[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised where there is no longer any basis for original jurisdiction." *Shaffer v. Township of Franklin*, No. 09-347, 2010 WL 715349, at *1 (D.N.J. Mar. 1, 2010); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (encouraging federal courts to avoid "[n]eedless decisions of state law"); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court."). If a district court decides it will not hear the remaining state law claims, and the case has been removed from a state court, the Court must remand the matter back to state court. *Bromwell v. Mich. Mut. Ins. Co.*, 115 F.3d 208, 213 (3d Cir. 1997) (concluding that "the plain language of 28 U.S.C. § 1447(c) mandates that the matter be remanded to the state court from which it was removed").

Under the present circumstances, the Court finds that remand is appropriate because no federal cause of action remains. While remand will certainly delay decision on the summary judgment issues, the parties' central facts and substantive arguments should remain the same. Remand would serve the goals of judicial economy and comity by allowing the New Jersey courts to apply New Jersey law. Therefore, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims pursuant to Section 1367(c)(3) and will remand the action to the Superior Court of New Jersey, Passaic County. *See Schaffer*, 2010 WL 715349, at *1 (declining to exercise supplemental jurisdiction over plaintiffs' remaining state law claims after plaintiffs voluntarily dismissed sole federal claim against defendant with prejudice).

## III. CONCLUSION

For the foregoing reasons and for good cause shown the Court administratively terminates Defendants' summary judgment motion (D.E. 48) and remands this action to the Superior Court of New Jersey, Passaic County. An appropriate form of order accompanies this opinion.

Dated: January 12, 2017

_____
John Michael Vazquez, USDJ